949 So.2d 1212 (2007)
GOULD & LAMB, LLC, Appellant,
v.
John D'ALUSIO, Appellee.
No. 2D06-2552.
District Court of Appeal of Florida, Second District.
March 9, 2007.
Anne Carrion Toale and William Garth Christopher of Maglio Christopher & Toale Law Firm, Sarasota, for Appellant.
Sidney W. Degan, III and Travis L. Bourgeois of Degan, Blanchard & Nash, New Orleans, Louisiana and John P. Holsonback of Fuller Holsonback Bivins & Malloy, P.A., Tampa, for Appellee.
CASANUEVA, Judge.
Gould & Lamb, LLC, appeals from an adverse final judgment entered in a lawsuit filed by its former employee, John D'Alusio. Mr. D'Alusio alleged, among *1213 other things, that his severance agreement with Gould & Lamb superseded a noncompete agreement that he had signed earlier in his employment. The trial court agreed with Mr. D'Alusio's theory of the case and thus rejected the company's counterclaim to enforce the noncompete agreement. On appeal, Gould & Lamb argues that the trial court should have granted its counterclaim for injunctive relief and enforced its noncompete agreement because the company demonstrated the existence of legitimate business interests, including trade secrets as defined in section 688.002(4), Florida Statutes (2005). We affirm the trial court's judgment in all respects.
Mr. D'Alusio was employed by Gould & Lamb from February 2003 until April 2005. At the commencement of his employment and again on January 3, 2005, Mr. D'Alusio executed a document titled "employee invention assignment and confidentiality agreement," which included a clause designated "duty not to compete." The noncompete provision restricted Mr. D'Alusio from working for a Gould & Lamb competitor during his employment or for a period of two years following separation.
Without any warning or any hint that the company might have been dissatisfied with any aspect of his employment, Mr. D'Alusio was terminated on April 14, 2005, because the company decided to eliminate his position. After some contentious negotiation, the parties entered into a severance agreement on May 4, 2005, which referred to Mr. D'Alusio's duties under a "proprietary information and invention agreement." Mr. D'Alusio had never signed such an agreement. Nevertheless, Gould & Lamb urged the court to reform the severance agreement to incorporate the noncompete provisions of the earlier contract, but the trial court found that no mistake of fact or inequitable conduct by Mr. D'Alusio would support reformation of the severance agreement. Therefore, the court ruled that the noncompete agreement did not survive.
Gould & Lamb further argued that Mr. D'Alusio breached or threatened to breach the noncompete and severance agreements by disclosure of proprietary secrets, but the trial court rejected that contention also. Finally, the trial court specifically found that Gould & Lamb breached one of the terms of the severance agreementits duty to timely pay the final installment of Mr. D'Alusio's severance paymentand entered judgment in favor of Mr. D'Alusio for that amount, together with prejudgment interest.
We agree with the trial court in all respects and write only concerning Gould & Lamb's contention that the trial court should have enforced the noncompete agreement. A party seeking to enforce a restrictive covenant such as a noncompete clause is required to "plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." § 542.335(1)(b), Fla. Stat. (2005). The statute lists five nonexclusive items that qualify as a legitimate business interest, such as valuable confidential business or professional information, substantial relationships with specific customers or clients, and trade secrets, which are defined as follows in section 688.002(4), Florida Statutes (2005):
[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

*1214 (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
In its counterclaim for injunctive relief, Gould & Lamb claimed that during his employment, Mr. D'Alusio was provided access to the company's proprietary information, including training manuals, customer lists, marketing processes, and production forms, techniques and processes. This information allegedly constituted trade secrets as defined by the statutes.
Gould & Lamb relied upon the testimony of its president, John Williams, to prove its claim:
We have internal processes that we've set up as an organization that helps us produce our cases faster, helps us improve our approval ratings with CMS, the Centers for Medicare and Medicaid Services, and helps us generate profit margins that are larger than our other competitors in the market place. The process was created by the Company and it did not wish the process to become known within the industry.
Additionally, Mr. Williams asserted that Mr. D'Alusio knew the identities of the firm's top clients and the percentage of the firm's income attributable to each client segment, which would permit him to target those clients on behalf of a new employer. Finally, Mr. Williams spoke in the briefest and most general terms of Gould & Lamb's desire to protect "marketing plans, product plans, business strategies, financial information, forecasts, and the like."
After hearing and evaluating conflicting trial testimony, the trial court concluded that Gould & Lamb did not prove the existence of trade secrets or that restraint was reasonably necessary to protect the legitimate business interests of Gould & Lamb. We agree with the trial court's evidentiary findings. Generalized statements of concern cannot substitute for proof.
Affirmed.
SALCINES and LaROSE, JJ., Concur.